SUPREME COURT. New York General Term, December, 1851
*Edmonds, Mitchell* and *King,* Justices.

EDWARD SMITH plaintiff in error *vs.* THE PEOPLE def'ts in error.

Where, on an indictment for perjury in having sworn falsely as to the ability
of the defendant to become bail for a prisoner charged with crime, the in-
dictment charged that the perjury was committed upon an examination had
after he had been previously sworn to make true answers to such questions
as should be put to him, touching his qualifications and competency to be
and become bail, &c., and it appeared on the trial, that after the answers of
the defendant to certain interrogatories had been taken down in writing, an
oath was administered to him, " that the answers to the forgoing interroga-
tories by him subscribed are each and every of them true," it was held
a material variance and that the proof did not support the indictment.

And where the indictment charged that the perjury was committed on the de-
fendant's offer to become bail for one Thompson committed on McDonald's
complaint in default of bail for $500, and the evidence showed the perjury
to have been committed on defendant's examination as bail for Thompson
committed on the complaint of Sayre and others in default of $3000 bail,
it was also held to be a material variance and that the proof did not support
the indictment.

The defendant in error was convicted of perjury at the New
York General Sessions, on the 19th October, 1849, and sen-
tenced to the state prison for five years and four months.

The indictment stated that on the 7th day of July, 1849, one
Samuel Thompson was in due form of law charged upon the
oath of Hugh McDonald, before James McGrath, one of the
police justices of the city of New York, with the crime of lar-
ceny, &c., &c., upon which said charge the said Samuel
Thompson was in due form of law committed by said justice to
the keeper of the city prison, by him to be safely kept until he
should find surety in the sum of $500, to answer sa'd complaint
or be thence delivered by due course of law.

That on the same day the said Samuel Thompson was com-
mitted by said justice to the custody of the keeper of the city
prison upon divers charges of felony, to be safely kept by him
the said keeper, until he should be thence delivered by due
course of law, and the said keeper of the city prison did then

and there receive and take said Samuel Thompson in the city prison aforesaid by virtue of the commitments aforesaid.

That on the 28th day of May, 1849, Edwin Smith came in his own proper person before said justice, and then and there offered himself to be and become the bail of said Thompson, and that he, said Thompson, should personally appear at the next court of general sessions, &c., &c., to answer said charges, &c. And thereupon the said Edward Smith was in due manner sworn by the said James McGrath, police justice, as aforesaid, to make true answers to such questions as should be put to him touching his qualifications and competency to be and become bail for the said Thompson, he, the said McGrath, having sufficient and competent power and authority to administer an oath to the said Edward Smith in that behalf.

That it then and there became necessary and material for said police justice to know what sum the said Edward Smith was worth over and above his debts and liabilities, and of what property he, said Smith, was then and there possessed.

That said Edward Smith being so sworn as aforesaid, did make his affidavit in writing, and did before the said McGrath, justice as aforesaid, upon his oath as aforesaid, he, the said McGrath, having competent authority to administer an oath, &c., &c., feloniously, falsely, willfully, &c., &c., swear, depose and say among other things to the substance and effect following: that is to say, that he (said Smith meaning), was worth the sum of twenty thousand dollars, &c., &c., stating what was sworn to and negativing the truth of his averments.

And so the jurors, &c., say that said Edward Smith, on the day, &c., &c., upon his oath aforesaid, before the said James McGrath, justice as aforesaid, &c., &c., did commit willful and corrupt perjury, &c., &c.

Upon the trial, Sidney H. Stewart, one of the clerks of police in the city of New York was called as a witness, who proved that on the 19th July, 1849, Samuel Thompson was committed on five charges of grand larceny and one of petit larceny, and produced the commitments, all being by justice McGrath, one on the complaint of Lewis H. Sayre, requiring bail in $500;

another on the complaint of William H. Norris, requiring bail in $500; another on the complaint of John Deraismes, requiring bail in the sum of $500; another on the complaint of Herd Mayor, on a charge of petit larceny, requiring bail in $200; another on the complaint of John J. Sturges, requiring bail in $500; another on the complaint of Hugh C. McDonald, requiring bail in $500. All the commitments except that on the complaint of Mayor being on charges of grand larceny and bearing date July 19, 1849.

The witness further proved that the defendant Smith offered himself as bail for Thompson on Saturday, July 28, 1849.

The witness then produced a paper entitled, " State of New York. In the matter of the people of the state of New York on complaint of Lewis A. Sayre and others against Samuel Thompson, alias Samuel Williams, called the confidence man," and which proceeded as follows:" Interrogatories and answers to be administered to Edward Smith who offers himself as surety for Samuel Thompson in the sum of three thousand dollars, the said Samuel Thompson being charged on the oath of Lewis A. Sayre with grand larceny. First interrogatory: What is your name, age, place of residence and occupation? Answer — My name is Edward Smith, &c., &c.," proceeding in the form of interrogatories and answers and signed at the end by the defendant, after which follows the jurat as follows: City and County of New York, ss.: On the 28th day of July, 1849, the above named Edward Smith personally appeared before me, and being duly sworn deposes and says, that the answers to the foregoing interrogatories by him subscribed are each and every one of them true, signed James McGrath, police justice.

The same witness further proved that the answers to the interrogatories were in his handwriting, it was subscribed by the defendant in his presence, he was sworn by Justice Mc-Grath and the signature of Justice McGrath was to the jurat: the execution of the said bail bonds was deferred till the next day when they were signed.

The district attorney then offered to read in evidence the several commitments so produced and proved.

The counsel for the prisoner objected that the indictment stated that Thompson was committed upon the complaint of Hugh McDonald and that no other commitment but that one should be read.

And that there was no allegation in the indictment of the said Thompson, having been committed on the charges mentioned in the other commitments produced, or of Smith's having offered himself as bail for Thompson on those other charges, and no foundation was laid in the indictment for admitting these other commitments.

The court allowed all the commitments to be read in evidence, to which the defendant's counsel excepted.

The district attorney then offered to read in evidence the examination proved by the witness.

This was objected to by the counsel for the prisoner, because it was not taken in the case charged in the indictment, viz.: in the complaint of Hugh McDonald, but in the matter of the complaint of Lewis A. Sayre and others, wherein no charge is made in the indictment of the defendant having committed perjury.

2. That the defendant was charged with having committed perjury upon his offer to become bail for Thompson committed upon McDonald's complaint and in no other case.

The court overruled these objections, on the ground that the prosecution had proved that Thompson had been committed on the complaint of McDonald, and also for divers other felonies as charged in the indictment, and that the defendant had offered himself as bail in all the cases.

The defendant's counsel then stated other objections to reading the examination:

3. That it was not taken in the cases mentioned in the commitments produced.

4. It was taken in a case where Lewis A. Sayre and others were complainants and the bail was $3000, and no such commitment was produced.

5. It was taken in reference to a complaint of Lewis A. Sayre alone, where the bail required was $3000, and the aggre-

Smith *v*. The People.

gate of the bail required by the commitments produced was only $2750.

6. The examination was not taken conformably to statute, the defendant having been interrogated in a sum beyond the amount of bail required.

7. The oath was extra judicial, having been administered to answer in several cases, as appears by the indictment, and there should have been a separate oath in each case.

8. That the defendant must first have signed the bonds before the justice had any authority to administer an oath to him.

9. That the examination was taken by the clerk not the magistrate, and therefore void.

10. The magistrate was not present at the examination.

11. That the examination was not taken under oath at the time the defendant was answering, and the oath having been administered after the defendant had answered it was a nullity.

12. That the examination was not taken upon oath to make true answers, &c., as alleged in the indictment, and did not support the indictment in that respect.

The court overruled the objections and allowed the examination to be read in evidence, to which ruling the prisoner's counsel duly excepted.

The six bail bonds executed by the prisoner were then read in evidence, sundry objections having been made to their introduction.

Justice McGrath having been called as a witness proved that Mr. Stewart, the clerk, interrogated the witness, he the justice being part of the time present; while the examination took place Mr. Stewart filled up the interrogatories, they were read over to the defendant in the witness's presence, and witness administered the oath to him after he had signed the examination.

A bill of exceptions having been made, the case was brought to this court by writ of error.

*F. Byrne,* for plaintiff in error.

*N. B. Blunt* (district attorney), and
*J. McKeon,* for defendant in error.

*By the Court,* KING, J. — It is contended on behalf of the prisoner that there was a variance between the proof offered against him on the trial and the charge against him in the indictment in this.

1. That the indictment charges him with perjury upon an examination where he had been previously sworn truly to answer questions, which charge is attempted to be supported by evidence that he falsely swore that the contents of an affidavit produced by him were true: and

2. That he is charged with perjury upon his examination as surety for Thompson, committed on the complaint of McDonald in default of $500, bail, which charge is attempted to be supported by evidence that he falsely swore upon his examination as surety for Thompson, committed on complaint of Sayre in default of $3000, bail.

Upon examining the indictment, it will be perceived that it charges that the plaintiff in error, Smith, was in due manner sworn to make true answers to such questions as should be put to him, touching his qualifications and competency to be and become bail for the said Samuel Thompson; that being so sworn as aforesaid, he made his affidavit in writing and did upon his oath aforesaid feloniously, &c., depose and say.

This differs from the usual form, where it is intended to allege perjury upon what is usually denominated an affidavit, where the oath is administered after the affidavit has been written and signed by the affiant, and is to the effect that the contents of the affidavit so subscribed are true.

The usual allegation being, that the defendant was in due form of law sworn and, upon his oath aforesaid, did depose, &c., and make affidavit in writing; or that the said defendant did produce to the said court a certain affidavit in writing of him, the said defendant, and then and there, &c., &c., was duly sworn and took his corporal oath, &c., &c., concerning the truth of the matters contained in said affidavit. (*Chitty Crim. L.* 319, 329.)

Nor is the charge such as is made where a party is indicted for false swearing upon his examination in justifying bail, as in

Smith *v.* The People.

those cases the averment that the party made affidavit in writing is omitted. (*Chitty Cr. L.* 331, 332.)

The charge as made in the indictment in this case is inconsistent in its different parts, if the word affidavit is to be taken in the usual acceptation of that term; and the allegation that he made an affidavit must be rejected as surplusage, or, if retained, it must be construed by the terms of the oath previously averred to have been taken, as meaning deposition.

In support of this charge, which imports that the party having been previously sworn, did, after taking the oath in his examination commit perjury, it seems to me improper to introduce evidence that the party was sworn to the truth of an affidavit presented to him, no examination taking place subsequent to the oath and therefore no violation of the oath appearing, which he is stated to have taken.

The difference between examinations and depositions is recognized in *The People* v. *Restell* (3 *Hill*, 304.) There, a deposition having been made and the witness sworn to its truth, the accused party was afforded the opportunity of putting questions to the witness, but, says the court, had she done so, and had the witness given false answers, she could not have been convicted of perjury, as she had not been sworn to answer questions at all.

It seems equally obvious that, in this case, the defendant could not be convicted on the indictment against him, without proving that he was sworn to make true answers to the questions that should be put to him, and did answer falsely after having been sworn. Such evidence was not produced; no proof was offered that he was first sworn and then interrogated. The only oath proved was, " that the answers to the foregoing interrogatories by him subscribed are each and every of them true." The deposition subscribed by the defendant being in the form of question and answer. Another question is presented, however, under this indictment Under the statute of 23 Geo. II, c. 11, which was reenacted by our revised laws, it is sufficient, in cases of perjury, to set forth the substance of the offence, the name of the court, a simple averment of the court's

authority to administer the oath, and proper averments of the falsity of the defendant's assertions. (2 *Chitty's Cr.* 507; *People* v. *Phelps*, 5 *Wend.* 9; *People* v. *Warner*, 271.) And in these latter cases, it was held that under the statute of jeofails in criminal cases, contained in the revised statutes, the same rules would still be applicable to indictments for perjury as under the revised laws, though the provisions of those laws were not reenacted in the revised statutes.

It being then sufficient to charge that the party was duly sworn, can the allegation of what he was sworn to do, be rejected as surplusage? It is laid down that every fact and circumstance which is not a necessary ingredient in the offence may be rejected as surplusage. (*Archb. Crim. Plea.* 42.) But even under the foregoing statute, if the prosecutor chooses to state the offence with greater particularity than is required, he is bound by the statement and must prove it as laid. (5 *T. R.* 311; *Rex* v. *Dowlin.*)

It is, however, of the very substance of the offence, it seems to me, what the oath was which was administered to the accused, and that having stated that a particular oath was administered, the prosecutor should not be allowed to prove one different in its nature. Although it is equally perjury to swear to a false affidavit, or to make a false answer, having been sworn to make true answers, it is not proving the same perjury; and the one offence only being charged, it seems at variance with the rules upon which indictments are framed and supported by evidence, to permit the charge to be thus modified to suit the evidence as it may appear. The indictment only charges perjury upon an examination, the accused having been previously sworn. The subsequent averment that the accused upon such oath made his affidavit in writing is repugnant to the preceding statement, and though the latter averment may be rejected as surplusage, I do not think the former can.

It is, secondly, urged on behalf of the plaintiff in error, that the proof varied from the charge in this, that the charge was of perjury upon occasion of the prisoner's offer to become bail for Thompson committed on McDonald's complaint in default

of $500 bail. The evidence was of perjury committed upon his examination as bail for Thompson committed on the complaint of Sayre and others in default of $3000 bail.

The indictment states that Thompson was committed upon McDonald's complaint in default of $500 bail.

That he was committed by McGrath upon divers charges of felony (no averment being made that the amount of bail on these charges was fixed, or that the committing magistrate could bail in those cases).

That Smith offered himself as bail that Thompson should appear at the next court of general sessions, &c., &c., and thereupon was sworn, McGrath having competent authority to administer the oath, that it was material for the police justice to know the amount of Smith's property, he swore it was a certain amount, which assertion of his was false.

It is contended on the part of the people, that the occasion of administering the oath is sufficiently indicated to be the offer of Smith to become bail for Thompson on all the charges of felony against him, and that the jurisdiction of the officer having been averred and the materiality of the matters deposed to by the prisoner, it was matter of evidence and not matter to be pleaded, how the evidence of the defendant was material, and upon what different charges of felony Thompson was committed.

It is first to be observed, that although at the trial a commitment of Thompson on the complaint of McDonald was produced, the only oath which it appeared the prisoner took was upon an affidavit or deposition in the matter of the people of the state of New York on complaint of Lewis A. Sayre and others against Samuel Thomson. If the title of the deposition is to determine in what proceeding it was taken, or if the title is to be disregarded and the caption of the deposition is to determine the proceeding in which it was taken, then it was upon Smith's offer to become *surety in* $3000 *for Samuel Thomson,* charged on the oath of Lewis A. Sayre with grand larceny.

Nothing in the deposition indicated that the prisoner offered

himself as bail for Thomson on the charge made by McDonald; and therefore the indictment, so far as it charges that to have been the occasion on which he committed perjury, is unsustained by evidence.

But it is insisted that it is also stated in the indictment, that Thomson was committed on divers charges of felony, and Smith offered himself as bail on all those charges, that it is therefore competent to offer evidence of other commitments than the one specifically stated in the indictment, and of Smith's deposition upon his offer to become bail for Thompson on those charges. Admitting this to be so, in order to sustain the verdict after conviction, though the practice of making such general charges is not to be commended and is not in accordance with the rules usually governing criminal proceedings, yet even then the evidence does not appear admissible. It is true five commitments, on charges of felony preferred by different persons against Thompson, were produced, and one commitment on a charge of petit larceny, not, according to the revised statutes, a felony; but among these commitments, there was none on the joint complaint of Lewis A. Sayre and others, and none on the sole complaint of Lewis A. Sayre in which the bail required was in the sum of $300.

The title of the deposition is, "In the matter of The People of the state of New York on the complaint of Lewis A. Sayre and others." This, according to usual acceptation, would mean the joint complaint of Lewis A. Sayre and others, and would indicate but one complaint. Rejecting the averment on whose complaint the people proceeded against Thompson, the caption of the deposition shows it to have been taken in a case where Lewis A. Sayre alone complained and the bail offered was $3000. Upon the commitment proved on Sayre's complaint, the bail required was $500 only.

To conform the evidence to the charge contained in the indictment in all its latitude, we must change the title of the deposition so that it shall read, "In the matter of the People on the complaints of Sayre and others against Thompson," we must change the caption so as to read, "Interrogatories to

· be administered to Smith who offers himself as surety for Thompson in the sum of $2500 (the aggregate amount of bail required on all the commitments for felony produced), charged on the oaths of Lewis A. Sayre and others with divers grand larcenies;" and we must omit the commitment of Thompson for petit larceny, which increasing the amount of bail so far increased the materiality of Smith's answers as to his property. As the proof now stands, it seems to me not to support any charge in the indictment.

The result is, that the evidence on the trial varying from the charge in the indictment, the prisoner has been wrongfully convicted and is entitled to a new trial. · The judgment in the court below must therefore be reversed, and a new trial ordered.

Judgment reversed.

